

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2004

# USA v. Williams

Precedential or Non-Precedential: Precedential

Docket No. 03-2434

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Williams" (2004). *2004 Decisions.* Paper 652.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/652

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-2434

_____

UNITED STATES OF AMERICA

v.

MARTIN WILLIAMS,
a/k/a Lewis Johnson,
a/k/a Peter Ejoh,
a/k/a Peter Anderson,

Appellant

_____

Appeal from the United States District
Court
for the District of New Jersey
(D.C. Criminal Action No. 96-cr-00587 )
District Judge: Honorable William H.
Walls

_____

Submitted Under Third Circuit LAR
34.1(a)
on February 13, 2004

Before: SCIRICA,Chief Judge, ROTH
and MCKEE, Circuit Judges

(Filed: May 21, 2004 )

Esther Salas, Esquire
Louise Arkel, Esquire
Federal Public Defender
972 Broad Street
Newark, NJ 07102

Counsel for Appellant

George S. Leone
Ricardo Solano, Jr.
Office of the United States Attorney
920 Broad Street
Room 700
Newark, NJ 07102

Counsel for Appellee

_____

O P I N I O N

_____

ROTH, Circuit Judge:

Appellant, Martin Williams, is a
Nigerian national who filed *pro se* motions
in the District Court of New Jersey seeking
dismissal of the detainer lodged against
him in May 2002 for violating the terms of
his supervised release. He argued, *inter
alia*, that the period of supervised release
included as part of his 1997 sentence
should have been deemed extinguished
upon his subsequent deportation. After the
District Court denied his motion, Williams
pleaded guilty. On appeal, Williams raises
this same issue, one of first impression in
this Circuit. After careful consideration,
we will affirm the judgment of the District
Court.

## I. Factual and Procedural History

On September 27, 1996, Williams pleaded guilty to bank fraud in violation of 18 U.S.C. § 1344 and obstruction of correspondence in violation of 18 U.S.C. § 1702. Pursuant to the sentencing guidelines, the United States District Court for the District of New Jersey sentenced Williams to 16 months imprisonment and five years of supervised release. The terms and conditions of Williams' supervised release included that (1) "the defendant shall not commit another federal, state, or local crime," and (2) "[i]f deported, the defendant shall not re-enter the United States without the written permission of the Attorney General."

After Williams completed his term of imprisonment on July 18, 1997, he was released into the custody of the Immigration and Naturalization Service. On July 23, 1997, he was deported to Nigeria.

Sometime after his deportation, but before his term of supervised release was to end, Williams re-entered the United States. On September 6, 2001, he was arrested under an alias in the Northern District of Illinois. Charged with credit card fraud, Williams pleaded guilty and was sentenced to 12 months imprisonment and three years of supervised release.

On April 30, 2002, Williams was indicted for illegally re-entering the United States in violation of 8 U.S.C. § 1326(a)

and (b)(2). After pleading guilty, on October 3, 2002, Williams was sentenced to seven months imprisonment and two years of supervised release.

On May 31, 2002, the District Court for the District of New Jersey issued an order to show cause why Williams should not be found in violation of the conditions of the supervised release imposed on him in connection with his 1996 bank fraud conviction. After a detainer was lodged against him, Williams moved to dismiss the detainer arguing, among other things, that his period of supervised release had ended upon his deportation.

The United States District Court for the District of New Jersey denied Williams' motion to dismiss the detainer. Subsequently, on April 29, 2003, Williams pleaded guilty to violating the condition of his supervised release which prohibited him from committing another federal, state, or local crime. That same day, the District Court revoked Williams' previously imposed term of supervised release and sentenced him to seven months imprisonment.

On appeal, Williams contends that his term of supervised release terminated upon deportation in 1997, thereby depriving the District Court of jurisdiction to revoke the term of supervised release.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction in this criminal matter pursuant to 18

2

U.S.C. § 3231, which confers original jurisdiction over all offenses against the laws of the United States, and, more specifically, 18 U.S.C. § 3583(i), which governs the authority of a court to revoke a term of supervised release. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Our review of issues of jurisdiction is plenary. See Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Mgmt, Inc., 316 F.3d 408, 410 (3d Cir. 2003).

### III. Discussion

Williams contends that his term of supervised release terminated on the date he was deported from the United States. He bases this argument on our decision in United States v. Porat, 17 F.3d 660 (3rd Cir. 1994), where we held that a defendant whose period of supervised release was conditioned on home detention in Israel must serve that period of supervised release in the United States. Id. at 671. The decision in Porat was based on the fact that home detention is perhaps the most serious and constraining condition of supervised release and therefore proper supervision is required. Id. at 670. We reasoned that, because there was no ongoing contact with a probation officer and the defendant could decide to end cooperation with the District Court, making it difficult or even impossible to bring the defendant before it to impose remedial measures, the defendant had to serve his complete sentence in the United

States. Id. at 670-71. Williams alleges that the reasoning underlying Porat is equally applicable in the instant case and that probation cannot supervise a defendant who has been deported.

We disagree. Williams' reliance on United States v. Porat is misplaced. Porat dealt with a defendant whose supervised release included home detention and therefore required active supervision. See 17 F.3d at 670-71. In contrast, a condition of supervised release requiring that a defendant not commit any federal, state, or local crime can be easily enforced against a defendant who after deportation illegally re-enters the United States and commits another federal, state, or local crime during the term of his supervised release (including the offense of illegal reentry). Enforcement of the condition in this case does not require supervision in a foreign country.

Moreover, the language of § 3583 does not provide for automatic termination of supervised release upon deportation. To the contrary, the statute provides that in such cases "the court may provide, as a condition of supervised release, that [the defendant] be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation." Id. § 3583 (d) (3). We see from the language of § 3583 that Congress was aware that some defendants sentenced to supervised release would be deported yet chose not to provide for automatic termination of supervised release when the defendant was deported.

3

The omission of such language defeats William's contention. See United States v. Ramirez-Sanchez, 338 F.3d 977, 981 (9th Cir. 2002) ("Had Congress intended for deportation to terminate a term of supervised release, it could have provided so"); United States v. Brown, 54 F.3d 234, 238 (5th Cir. 1995) ("If Congress intended for deportation to terminate this sentence, it could have specifically provided for such to occur. However, Congress has not done so . . . "). Indeed, it would be inconsistent for Congress to authorize a district court to order a defendant to "remain outside the United States" following deportation as a condition of supervised release but concurrently intend that condition to extinguish upon deportation. See Brown, 54 F.3d at 239 ("This is a clear indication that a term of supervised release remains in effect after the defendant is deported.").

We will follow the other courts of appeals that have held that supervised release is not automatically extinguished by deportation. See Ramirez-Sanchez, 338 F.3d at 980; United States v. Cuero-Flores, 276 F.3d 113, 117 (2d Cir. 2002); United States v. Akinyemi, 108 F.3d 777, 779 (7th Cir. 1997); Brown, 54 F.3d at 238-39.

### IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.